FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2015 MAR 31 PM 4 09
STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| LAWRENCE P. RUDOLPH, D.D.S., and CAMELBACK CONSULTING MARKETING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RALPH CUNNINGHAM; LARRY HIGGINS; SCOTT CHAPMAN; JOYCE HANLEY; and DAVID SMALL,<br><br>Defendants. | Case No. 2:13–CV–00181–ABJ |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendants' Motions to Dismiss (Doc. Nos. 16 and 23), Plaintiffs' opposition thereto (Doc. Nos. 21 and 26) and Defendants' further reply (Doc. No. 28) have come before the Court for consideration. Having considered the pleadings, the applicable law, the parties' written submissions, and materials offered in support of their respective positions, the Court FINDS and ORDERS as follows:

## BACKGROUND

Plaintiff Rudolph alleges that after a fellow Safari Club International member filed a complaint against him, Defendants, members of the Safari Club International Board of Inquiry, failed to investigate the allegations properly and in numerous venues announced false accusations against him to third parties. Plaintiff Rudolph asserts that because of Defendants'

1

defamatory comments, Safari Club terminated his contract, banned him from the club, and revoked all of his previous awards.

Plaintiff Rudolph brings claims of defamation, civil conspiracy to defame, and tortious interference with contract claims against Defendants. Defendants moved to dismiss the claim for lack of personal jurisdiction. After Defendants filed their first motion to dismiss, Plaintiff Rudolph amended his complaint and added his limited liability corporation, Camelback Consulting Marketing LLC, as a co-plaintiff. In response, Defendants filed another motion to dismiss for lack of personal jurisdiction. Because Defendants lack minimum contacts with Wyoming, the Court agrees that it lacks personal jurisdiction over Defendants and therefore **GRANTS** Defendants' motions.

## FACTS

Drawing all reasonable inferences in favor of Plaintiffs, the following facts are from the Amended Complaint and attached exhibits. This case involves a dispute stemming from all parties' membership and roles in Safari Club International (SCI), a nonprofit organization that has 196 chapters in 26 countries and has around 55,000 members.[1] (Amended Compl. ¶13). SCI has a 320-member Board of Directors with a 10-member Executive Committee. (Amended Compl. ¶23). SCI is not a party in this case.

At the time relevant to this complaint, SCI had a Board of Inquiry (BOI), comprised of five SCI members that handled internal disputes within SCI. At all relevant times, Defendant Cunningham was the BOI Chairman and Defendants Higgins, Chapman, Hanley, and Smalls were BOI members. (Amended Compl. ¶25). Plaintiff Rudolph is not a Wyoming resident,

---

[1] Plaintiffs assert that Safari Club International has real property near Granite Creek in the Bridger Teton National Forest in Wyoming. (Compl. ¶ 14). This fact is wholly irrelevant because SCI is not a named party to this action and Plaintiff is suing Defendant BOI Members in their individual capacities.

2

neither are any of Defendants. (Amended Compl. ¶¶6–10). Plaintiff Camelback Consulting Marketing, LLC is not a Wyoming LLC.

The BOI has its own set of procedures for handling complaints and internal disputes. Although the parties did not provide the Court with a copy of the BOI procedures, based on the Complaint, the procedures, in the least, allow the BOI to investigate and hold hearings on SCI member misconduct or other internal disputes, and allow the BOI to set forth findings and recommend sanctions to the Board of Directors and Executive Committee. (Amended Compl. ¶¶33–37).

Plaintiff Rudolph was very involved in SCI. He was a 25-year SCI member, served in numerous, respected SCI leadership roles, and received a Weatherby Award that recognizes SCI members for outstanding support of wildlife conservation, lifetime hunting achievement, and dedication to the principles of ethical sport hunting. (Amended Compl. ¶¶16–21). Additionally, Plaintiff Rudolph, through his LLC, Camelback Consulting Marketing, performed public relation functions as SCI's Chief Communications Officer from July 2011 to August 2012. (Amended Compl. ¶22).

In February 2012, however, Plaintiff Rudolph started having trouble within SCI. Plaintiff Rudolph alleges that at the SCI's Hunters Convention in Las Vegas, Nevada, his SCI co-member, Paul Babaz,[2] started spreading false rumors about him. (Amended Compl. ¶27). Plaintiff Rudolph alleges that he confronted Babaz about the rumors and Babaz threated to harm him. (Amended Compl. ¶ 28). Plaintiff Rudolph further alleges that after their disagreement, Babaz reported the rumors to then SCI-President and General Counsel and complained that

---

[2] Babaz, like SCI, is not a named party in this action.

Plaintiff Rudolph threatened Babaz physically. (Amended Compl. ¶¶ 30, 31). Then someone, it is not clear who, filed a BOI complaint against Plaintiff Rudolph. (Amended Compl. ¶32).

Plaintiff Rudolph alleges that before he had the opportunity to request a BOI hearing, on May 1, 2012, the BOI issued findings that addressed alleged misconduct by Plaintiff Rudolph. (Amended Compl. ¶¶ 38–42). The BOI found that Plaintiff Rudolph: (1) breached his fiduciary duties to SCI; (2) made false or deceptive record book entries; (3) made false statements or published nonpublic SCI information; (4) engaged in inappropriate relationships with women while on SCI business; (5) filed questionable reimbursement requests; and (6) engaged in misleading conduct toward the BOI. (Amended Compl. ¶42) ("the findings").

On May 12, 2012, SCI held a board meeting in Washington D.C.; around 160 board members attended by video or in person. (Amended Compl. ¶¶44–46). During this meeting, SCI held its annual election and Plaintiff Rudolph was a candidate for secretary. (Amended Compl. ¶¶ 44, 45). Prior to the elections, the BOI allegedly publicly presented the findings as described above. (Amended Compl. ¶¶47–49, 58–61). Plaintiff Rudolph did not win the secretarial election. (*See* Amended Compl. ¶53).

On May 31, 2012, Plaintiff Rudolph requested an internal hearing on the charges. (Amended Compl. ¶ 57). The hearing occurred on August 18, 2012. (Amended Compl. ¶ 75). It is unclear from the record where the hearing occurred, but Plaintiff Rudolph appeared by phone. (Amended Compl. ¶77). Following the hearing, on August 22, 2012, the SCI Executive Committee issued an emergency suspension of Plaintiff Rudolph's membership in SCI. (Amended Compl. ¶82).

On August 25, 2012, SCI held a board meeting in Jackson Hole, Wyoming, which all Defendants attended. (Amended Compl. ¶¶ 85, 86). At this meeting, Defendant Cunningham,

chair of the BOI, allegedly read a list of the charges against Plaintiff Rudolph aloud and stated that all BOI members believed that Plaintiff Rudolph was guilty of the charges.[3] (Amended Compl. ¶88). Then the Board of Directors voted to ratify the Executive Committee's decision to terminate Plaintiff Rudolph's contract as Chief Communication Officer.[4] (Amended Compl. ¶94). The BOI recommended that the Board of Directors expel Plaintiff Rudolph from SCI membership and strip him of all awards and record book entries. (Amended Compl. ¶97). After questioning Plaintiff Rudolph to determine the severity of the charges, the Board of Directors voted to expel Plaintiff Rudolph from his membership in SCI, terminated his employment as CCO, and removed his name from all record book entries and awards. (Amended Compl. ¶104).

Plaintiffs bring claims of defamation, civil conspiracy to commit defamation, and tortious interference with a contract against the Defendant BOI members. Defendants filed Motions to Dismiss asserting that the Court does not have personal jurisdiction over Defendants and Plaintiffs failed to state a valid cause of action for punitive damages. Plaintiff Rudolph previously brought suit against Defendants in the Western District of Pennsylvania. *Rudolph v. Safari Club Int'l*, No. 12CV1710, 2013 WL 1181897, at *1 (W.D. Pa. Mar. 20, 2013) (dismissing Defendants from the case for lack of personal jurisdiction).

---

[3] Plaintiff Rudolph expanded the earlier identified list of charges to include: (1) Plaintiff threatened to kill an SCI member at the 2012 convention and showed a pattern of misconduct in relationship to SCI personnel; (2) Plaintiff made false or deceptive record book entries relating to a hunt in Mexico; (3) Plaintiff made false statements in his campaign for SCI secretary; (4) Plaintiff pursued an inappropriate relationship with a woman that was not his wife at SCI functions, and used his SCI position to pursue this relationship; (5) Plaintiff submitted questionable reimbursement requests to SCI, including multiple requests for reimbursement for the same airfare; (6) Plaintiff was dishonest and deceptive with the BOI; (7) Plaintiff had threatened to sue SCI, the BOI, and the BOD and that such threats were calculated to intimidate the BOI, in violation of SCI policy with respect to legal action; and (8) Plaintiff violated his duty of loyalty, care, good faith and fair dealing to SCI through his activities as president of the Weatherby Foundation.

[4] The Court assumes the Executive Committee made the decision to terminate this contract when it made the decision to suspend Plaintiff Rudolph's SCI membership, but this is not clear from the record.

## DISCUSSION

The plaintiff bears the burden of establishing personal jurisdiction. *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). The plaintiff need only make a prima facie showing of personal jurisdiction if the district court entertains the motion based on the complaint, affidavits, and other written materials. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The plaintiff can make such a showing by demonstrating facts that if true would support jurisdiction over the defendant. *AST Sports Sci., Inc. v. CLF Distribution, Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). The court takes as true all well-pled facts in the complaint and resolves all factual disputes in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Plaintiffs claim diversity of citizenship as the basis for federal jurisdiction pursuant to 28 U.S.C. § 1332. (Amended Compl. ¶1). In a diversity action, to establish that a court has personal jurisdiction over a nonresident defendant, the plaintiff must show that the court's exercise of personal jurisdiction would be consistent with both the forum state's long-arm statute and the Due Process Clause. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Wyoming's long-arm statute permits Wyoming courts to exercise personal jurisdiction over a defendant on any basis that is consistent with the Wyoming or United States constitutions. WYO. STAT. §5-1-107(a). Because Wyoming's long-arm statute confers the maximum jurisdiction permissible consistent with due process, the personal jurisdiction issue collapses into a single analysis under the Due Process Clause. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

It is undisputed that none of the parties before the Court is a Wyoming resident. Plaintiffs argue that Court has personal jurisdiction over Defendants for the following reasons:

6

(1) SCI owns real property in Wyoming; (2) SCI has a history of holding meetings in Wyoming, which Defendants have attended; (3) Defendants defamed Plaintiff Rudolph in Wyoming; and (4) while in Wyoming, the SCI Board of Directors voted on and affirmed the BOI's recommended sanctions based on Defendants' alleged defamatory acts. The Court finds it necessary to note that the question of whether Wyoming has jurisdiction over Defendants is a "close call." A tort did allegedly occur in Wyoming, but this case involves only one contact with Wyoming by Defendants and a long series events leading up to the alleged tort, and does not involve any Wyoming residents, Wyoming activities, or Wyoming businesses

### A. SCI's property and activities in Wyoming as a basis for jurisdiction

Before discussing the typical minimum contacts analysis, the Court must first address Defendants' argument that involves the "separate entity doctrine." Defendants attempt, without citing any case law in support, to argue that Plaintiffs cannot impute SCI's contacts in Wyoming to Defendants. This discussion applies to Plaintiffs' arguments that SCI's Wyoming property and history of holding meetings in Wyoming establish jurisdiction. Defendants are essentially arguing that the separation entity doctrine applies. The separate entity doctrine, recognized by Wyoming courts, states that a corporation is a separate entity distinct from the individuals comprising the corporation. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1526 (10th Cir. 1987); *Opal Mercantile v. Tamblyn*, 616 P.2d 776, 778 (Wyo. 1980). Given the distinction between a corporation and its agents, SCI's contacts with Wyoming cannot be attributed to the individual defendants. *See Ten Mile Indus. Park,* 810 F.2d at 1526. As such, the Court finds that SCI's previous Wyoming meetings that Defendants did not attend and SCI's Wyoming property are not a basis for establishing jurisdiction over Defendants.

The Court, however, must still consider whether the separate entity doctrine applies to Defendants and their actions during the board meeting in Wyoming, not solely to SCI's actions in Wyoming. Plaintiffs seek jurisdiction over Defendants in their individual capacities, thus Defendants' contacts with Wyoming must have been committed in their individual capacities. In *Ten Mile Indus. Park*, the Tenth Circuit upheld the District Court's grant of a motion to dismiss for lack of personal jurisdiction and found that the non-moving parties failed to offer sufficient evidence to demonstrate executive committee members used the corporation "to conduct personal affairs" and they failed to "set forth any grounds for the exercise of jurisdiction over the executive committee members independent of those [members'] activities on the corporation executive committee." *Id.* The Tenth Circuit held that "[w]here the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." *Id.* at 527.

Defendants argue that their actions were solely in their corporate or representative capacity as BOI members,[5] and thus argue that the Court lacks jurisdiction over Defendants. Based on *Rusakiewicz v. Lowe*, however, the Court finds that the separate entity doctrine does not apply to Defendants' actions in Wyoming. 556 F.3d 1095 (10th Cir. 2009). In *Rusakiewicz*, the Tenth Circuit stated, in a factually similar situation and in response to a similar argument, that the defendants misread *Ten Mile* and clarified the rationale behind the separate entity doctrine—an officer in a corporation is not personally liable for all the acts of the corporation. *Id.* at 1102. The Tenth Circuit went on to explain that jurisdiction over representatives "must be based on their individual contacts with the forum state." *Id.* (quoting *Ten Mile Indus. Park v. W.*

---

[5] The Court need not address the issue of whether Defendants, as BOI members, are corporate officers to resolve this issue.

8

*Plains Serv. Corp.*, 810 F.2d at 1527). Plaintiffs in this case are not imputing the actions of the corporation on Defendants, but instead are relying on Defendants' defamatory remarks during a meeting in Wyoming that resulted in corporate action. Like in *Rusakiewicz*, Plaintiffs' complaint in the instant case is not predicated on Defendants' status as corporate officers, but on their own personal and allegedly defamatory acts as individuals. Accordingly, the separate entity doctrine does not apply to Defendants and their actions during the board meeting in Wyoming.

### B. Specific personal jurisdiction over Defendants

Because the separate entity doctrine does not answer the jurisdictional question, the Court must look to the traditional personal jurisdiction analysis. A nonresident defendant's contacts with the forum state can give rise to either general or specific personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Plaintiffs do not allege that the Court may exercise general jurisdiction over Defendants based on their "continuous and systematic general business contacts" with the forum state, but allege this Court has specific jurisdiction over Defendants because Defendants committed torts during the Jackson Hole board meeting and visited Wyoming numerous times for SCI business. Thus, the Court will focus on specific personal jurisdiction—i.e., jurisdiction specific to this dispute—and its attendant "minimum contacts" test.[6]

To determine whether specific jurisdiction exists, the Court engages in a two-step inquiry. First, the Court asks whether the nonresident defendant has minimum contacts with the forum state such that he should reasonably anticipate being haled into court there. *TH Agric. &*

---

[6] Plaintiffs argue that committing a tort in the forum state, in itself, often creates a sufficient nexus between the defendant and the state to satisfy the due process inquiry. [ECF No. 26, pg. 4]. Plaintiffs, however, fail to cite any binding law in support of their argument. Furthermore, Wyoming, unlike other courts, does not have a statute that confers jurisdiction in Wyoming when the commission of a tortious act occurs in the state. Thus, the Court will engage in the specific jurisdiction analysis.

*Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). Second, if the defendant has sufficient minimum contacts, the court asks whether its "exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *TH Agric. & Nutrition, LLC*, 488 F.3d at 1287 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Specific jurisdiction exists over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp.*, 471 U.S. at 472). Specifically, in tort-based lawsuits such as this one, "purposeful direction" has three elements: "(a) an intentional action ... that was (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state...." *Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1072).

### 1. Element one: intentional action

In the instant case, the intentional action element needs little discussion. Plaintiffs, among other claims, have alleged that Defendants defamed Plaintiff Rudolph at the Wyoming meeting. Under Wyoming law, defamation is an intentional tort. *Long-Russell v. Hampe*, 2002 WY 16, ¶ 11, 39 P.3d 1015, 1019 (Wyo. 2002) (stating in dicta that defamation is an intentional tort that constitutes a direct violation of the plaintiff's rights). As such, inherently, Defendants making allegedly defamatory statements were intentional actions and Plaintiffs satisfy the intentional action element of the purposeful direction inquiry.

## 2. Element two: express aiming

Regarding the remaining two elements, the Court finds *Calder v. Jones* provides necessary guidance. 465 U.S. 783, 783, 104 S. Ct. 1482 (1984). In *Calder*, a professional entertainer brought a libel suit in California alleging that editors in Florida published a libelous article that they circulated in California, the entertainer's state of residence. *Id.* The entertainer served the editors in Florida. *Id.* The editors moved to quash the service for lack of personal jurisdiction. *Id.* The Supreme Court found that personal jurisdiction existed in California over the editors. *Id.* The Tenth Circuit has analyzed *Calder* and distilled it to its essence, stating:

> [W]e thus understand the [Supreme] Court to have found purposeful direction [in *Calder*] because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and her career revolved around the entertainment industry there).

*Dudnikov*, 514 F.3d at 1072.

The express aiming element focuses on a defendant's intentions and requires Wyoming to have been the "focal point" of the tort. *Newsome*, 722 F.3d at 1268 (quoting *Dudnikov*, 514 F.3d at 1074). The Tenth Circuit has taken a "somewhat more restrictive approach" to this element, holding that the forum state itself—and not merely a known resident of the forum state—must be the focal point of a defendant's actions. *Dudnikov*, 514 F.3d at 1075 n. 9. It is at this point that the personal jurisdiction analysis begins to disfavor Plaintiffs.

Unlike in *Calder*, Plaintiff Rudolph is not a resident of Wyoming where Defendants made the alleged defamatory remarks and Plaintiff Camelback Consulting, Marketing, LLC is

11

not a Wyoming LLC. Plaintiff Rudolph has not alleged that he or his LLC does business in Wyoming. Also, unlike in *Calder*, the alleged defamation was not about activities that occurred in Wyoming and Plaintiffs do not allege that Wyoming residents were among those to whom the Defendants allegedly published defamatory remarks.

Moreover, according to Plaintiffs, Defendants defamed Plaintiffs in at least two locations outside of Wyoming, including in Washington D.C. and during Plaintiff Rudolph's BOI hearing. Defendants' conduct prior to the Wyoming meeting and Plaintiffs' lack of connection to Wyoming is evidence that Defendants did not expressly aim their conduct at Wyoming. It seems it was merely fortuitous that SCI held its next meeting in Wyoming and that SCI discussed Plaintiff Rudolph's charges, findings, and sanctions at the Wyoming meeting. Therefore, the Court finds that Plaintiffs cannot satisfy the "express aiming" element of the purposeful direction inquiry because Wyoming was not the "focal point" of Defendants' alleged wrongdoing. *See Newsome*, 722 F.3d at 1268 (quoting *Dudnikov*, 514 F.3d at 1074).

### 3. Element three: brunt of the injury

The third element, knowledge that the brunt of the injury would be felt in the forum state, "concentrates on the consequences of the defendant's action—where was the alleged harm actually felt by the plaintiff." *Dudnikov*, 514 F.3d at 1075. Here, Plaintiffs assert the following injuries or damages occurred: (1) termination of his employment; (2) loss of the esteem of his colleagues, friends, and acquaintances in the international hunting community and outside it; (3) significant monetary damages due to the lack of notice of termination of Plaintiff's employment contract; (4) loss of his SCI membership, awards, and record book entries; and (5) general other damages. Plaintiffs argue that because the Board of Directors voted in Wyoming to revoke

Plaintiff Rudolph's SCI membership and record book entries, Plaintiffs felt their injuries in Wyoming.

The Tenth Circuit has analyzed this element and found that the "brunt of injury" element was met where the plaintiffs' businesses were located in the forum state and defendants knew that that their actions would affect the plaintiffs' businesses. *Dudnikov*, 514 F.3d at 1077; *Newsome*, 722 F.3d at 1269. Nothing in the Amended Complaint shows that Plaintiff Rudolph or Plaintiff Camelback Consulting Marketing, LLC engaged in any activities or business in Wyoming that were harmed by Defendants' alleged actions or that Defendants could have predicted would be harmed in Wyoming.

The Court recognizes that the Board of Directors voted to revoke Plaintiff Rudolph's SCI membership in Wyoming. The Court, however, considers the phrase "brunt of" particularly important in this case involving multiple allegations of defamation in different locations. Brunt is defined as "the main impact, force, or burden, as of a blow." WEBSTER'S II NEW COLLEGE DICTIONARY, 146 (3d ed. 2005). The Court finds that the vote occurring in Wyoming does not change the fact that Plaintiff Rudolph does not reside in Wyoming, his LLC is not a Wyoming LLC, and that he fails to allege that he performed any business in Wyoming, that his reputation with Wyoming residents was harmed, or that any Wyoming residents heard the defamatory remarks. Further, there is nothing in the record that indicates Defendants anticipated the brunt of Plaintiffs' injuries would be felt in Wyoming. Plaintiffs' harm to their reputation and business could not have been felt in Wyoming, if indeed no Wyoming resident heard the defamatory remarks and Plaintiffs do not do business in Wyoming. The Court recognizes that Plaintiffs suffered injury because of the alleged defamation, but the Court is finding it hard to determine the brunt of the injury occurred in Wyoming.

Next, the Court will consider when the alleged injuries occurred to determine where the brunt of the injuries occurred. Before the Wyoming meeting, Plaintiff Rudolph lost the secretarial election in Washington D.C. and the SCI Executive Committee issued an emergency suspension of Plaintiff Rudolph's membership in SCI allegedly because of Defendants' previous defamation. (Amended Compl. ¶¶ 53, 82). Following the Wyoming meeting, SCI officially sent Plaintiff Rudolph a letter that officially terminated his employment contract with SCI. (Amended Compl. ¶¶ 114–117). These significant injuries all occurred outside of Wyoming.

And finally, the Court finds it very telling that Plaintiff Rudolph previously argued that Defendants made the allegedly defamatory statements during the Wyoming meeting so that Plaintiff Rudolph would suffer harm in his home state of Pennsylvania, not in Wyoming.[7] Due to the lack of connection of Plaintiffs' reputation and business harm to Wyoming and the injuries Plaintiffs felt before and after the Wyoming meeting, the Court finds that, although the vote and a portion of the alleged defamation occurred in Wyoming, Plaintiffs felt the **brunt** of the injury outside of Wyoming where they reside and where they do their business.

The Court finds that the third element of purposeful direction has not been met. Thus, considering the three elements of the purposeful direction inquiry, the Court concludes that Defendants did not direct their allegedly wrongful activities at Wyoming. Plaintiffs have not

---

[7] *Rudolph v. Safari Club Int'l*, No. 12CV1710, 2013 WL 1181897, at *5 (W.D. Pa. Mar. 20, 2013).
  Plaintiff contends that when the individual BOI members (meaning the Individual Defendants, with the exception of Defendant Whipple) allowed Defendant Cunningham to publish a list of the defamatory charges pending against Plaintiff on two occasions (during the May 12, 2013, and the August 25, 2012, Board meetings) and these Defendants purposefully directed their activities at the forum state of Pennsylvania. Plaintiff argues that the BOI members knew that Plaintiff was a Pennsylvania resident, knew that he would "suffer harm in his home state." This knowledge formed the basis for the members' collective decision to direct the defamatory remarks into the Commonwealth of Pennsylvania by publishing these remarks on May 12, 2012, to eight Pennsylvanians who were Board members of Defendant Safari Club as well as 152 other members who were not Pennsylvanians.

satisfied the purposeful direction test as to Defendants. Accordingly, Plaintiffs have not established minimum contacts in Wyoming.

When a plaintiff satisfies its minimum contacts burden, the burden then shifts to the defendant to show that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271 (quoting *Dudnikov*, 514 F.3d at 1080). Having determined that Plaintiffs have not met their burden of proving minimum contacts for personal jurisdiction, the burden does not shift to Defendants and the Court will not analyze whether personal jurisdiction would offend traditional notions of fair play and substantial justice. In sum, the Court finds that it lacks personal jurisdiction over Defendants.[8]

## CONCLUSION

For the above stated reasons, the Court does not have personal jurisdiction over Defendants in this matter. Therefore, Defendants' Motions to Dismiss (Docs 16 and 32) are GRANTED.

Dated this 31st day of March 2015.

Alan B. Johnson
United States District Judge

---

[8] The Court did not consider Defendants' arguments regarding punitive damages because the finding on personal jurisdiction moots this argument.